IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.   20-133 |
| | ) | |
| v. | ) | |
| LARON MCKINNON, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

I.     Introduction

Defendant Laron McKinnon ("McKinnon"), through counsel, filed a motion to suppress evidence obtained pursuant to search warrants issued with respect to two locations in Farrell, Pennsylvania (ECF No. 26).  McKinnon argues that the application for the search warrants failed to support adequately the reliability of the confidential source and that the photograph identification procedure used to procure the search warrants was unduly suggestive.  McKinnon also seeks a "*Franks* hearing" about the veracity of one statement in the application for the search warrants, namely, that McKinnon was currently residing at one of the addresses to be searched.  The government filed a response in opposition to the motion (ECF No. 28).

Because McKinnon's motion challenges the "four corners" of the affidavit and does not present a material factual dispute, the court concludes that an evidentiary hearing is not warranted.  *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) ("A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress.") (citations omitted).  The motion is ripe for disposition.

II.     Factual and Procedural Background

McKinnon is charged in a three-count indictment at Criminal Number 20-133 with:  (1) possession with intent to distribute a quantity of crack cocaine and a quantity of cocaine; (2) possession of a firearm in furtherance of drug trafficking; and (3) possession of ammunition and a firearm by a convicted felon.  The date of each charged offense was February 14, 2020 (ECF No. 1).

Relevant to the issues raised by McKinnon are the following facts, which were set forth in the 23-page affidavit in support of application for search warrants prepared by City of Hermitage police officer Marc Frampton ("Frampton") on February 12, 2020 (ECF No. 28-1).  The same affidavit was submitted to search two homes about a block apart:  622 Emerson Avenue, Farrell, Pennsylvania ("622 Emerson"); and 713 Emerson Avenue, Apartment 3, Farrell, Pennsylvania ("713 Emerson").

Frampton had been employed as a police officer by the City of Hermitage since 2013, with the majority of his time assigned to the Mercer County Drug Task Force.  McKinnon was the subject of the investigation.  A criminal background check revealed that McKinnon was arrested for drug-related offenses in 2004 and pleaded guilty to aggravated assault in 2005.  Affidavit ¶ 18.  Frampton stated that he had researched the drug activities of McKinnon and his criminal associates.

The affidavit stated:  "Confidential sources have advised that MCKINNON is **currently residing** at 713 Emerson Avenue Apartment 3, City of Farrell, Mercer County, Pennsylvania 16121 but is also known to frequent 622 Emerson Avenue, . . ., and utilizes both aforementioned residences as a 'stash house' for concealing narcotics." *Id.* ¶ 18 (emphasis added).  This statement is the focus of McKinnon's request for a *Franks* hearing.

In October 2019, a confidential informant ("CI") advised officers that McKinnon was trafficking crack cocaine in the Shenango Valley area. The CI was shown a photograph, with all identifying information withheld, and positively identified McKinnon. *Id.* ¶ 21. The CI further stated that he/she had seen crack cocaine and multiple firearms inside McKinnon's residence.

The affidavit stated: "The CI has been proven a reliable source and all information gleaned from the CI has been corroborated by Law Enforcement through intelligence and physical surveillance." *Id.* The affidavit further explained that the CI routinely provided information, over several months, that was against the CI's own penal interests; resulted in the seizure of large quantities of narcotics and money; and led to multiple arrests and convictions in state and federal court. *Id.* The affidavit represented that the CI was currently assisting law enforcement in other drug and criminal investigations. *Id.* ¶ 35.

In February 2020, the CI was used to make two controlled purchases of crack cocaine from McKinnon under the direction and supervision of Frampton. *Id.* ¶ 22. The affidavit described the protocol used for making the controlled buys and represented that the protocol was followed. *Id.* ¶ 23.

The affidavit described the residence at 713 Emerson, set forth the ownership based on Mercer County records, and stated that McKinnon was observed at the location within the past 30 days. *Id.* ¶ 24. The CI confirmed that he/she had purchased drugs from McKinnon in the past by going directly to the 713 Emerson location. *Id.* ¶ 25.

The affidavit described a controlled buy during the week of February 2, 2020. While the CI remained alone inside 713 Emerson, McKinnon was observed exiting 713 Emerson, walking to 622 Emerson, speaking with an unknown person, and then returning to 713 Emerson. *Id.* ¶¶ 25-27. Afterwards, the CI informed officers that McKinnon told the CI that he needed to "walk up

3

the street" (i.e., to 622 Emerson) to obtain the crack cocaine. *Id.* ¶ 32. The affidavit described a second controlled buy "within the past [48] hours" inside 713 Emerson. *Id.* ¶¶ 28-30. The CI confirmed that he/she dealt directly with McKinnon.

The affidavit recounted that 622 Emerson was owned by a person related to McKinnon. On February 8, 2020, officers conducted a traffic stop on a vehicle leaving 622 Emerson, which resulted in seizure of a large amount of money, quantities of marijuana, cocaine and crack cocaine, and the arrest of three persons on felony drug charges. Frampton obtained information during the investigation that McKinnon periodically stayed at 622 Emerson. *Id.* ¶ 33.

The affidavit recited observations of vehicle and foot traffic at both locations within the past 48 hours that, based on Frampton's training and experience, was indicative of narcotics trafficking. *Id.* ¶ 34. Frampton identified several vehicles of known drug users making very brief stops at the 622 Emerson location. *Id.*

Frampton requested that the affidavit be sealed for 60 days to protect the CI's identity and ongoing investigations. The search warrants were issued by a Mercer County Court of Common Pleas judge on February 12, 2020. The motions to seal were granted. On February 14, 2020, officers executed the search warrants. They encountered McKinnon and recovered the drugs and firearms charged in the indictment.

### III.     Legal Analysis

McKinnon articulates the following reasons for suppression of the evidence obtained in the searches: (1) the affidavit failed to identify that the CI had been reliable in the past (ECF No. 26 ¶¶ 5, 8); (2) the photograph identification procedure was unduly suggestive (¶¶ 7, 18); and (3)

the affidavit contained a false or misleading statement about whether McKinnon was residing at the 713 Emerson location. Each of these arguments will be addressed.

### A. General principles of law

As an initial matter, the court recognizes that the searches at issue were conducted pursuant to warrants issued by a state court judge. A basic premise of the search and seizure doctrine is that searches should be undertaken with judicial oversight. *Katz v. United States*, 389 U.S. 347, 357 (1967). The court pays "great deference" to the issuing judge's initial determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). This court's role is limited to ensuring that the issuing judge had a "substantial basis" for concluding that the affidavit supporting the warrant established probable cause. *Id.* at 236.

To establish "probable cause," the government must present evidence that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238 (1983). This standard is "flexible" and calls for a "practical, common-sense decision" based on the "totality-of-the-circumstances." *Id.* at 238-39; *see Florida v. Harris*, 568 U.S. 237, 244 (2013) ("All we have required is the kind of 'fair probability' on which reasonable and prudent people, not legal technicians, act ... We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach.").

This court must conduct "a deferential review of the initial probable cause determination made by the magistrate." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). The Third Circuit Court of Appeals summarized the applicable legal principles in *Stearn*:

> The role of a reviewing court is not to decide probable cause de novo, but to determine whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238, 103 S. Ct. 2317 (citation and quotation omitted).
>
> As we explained in *Jones*,

5

> [O]ur role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made.
>
> *Jones*, 994 F.2d at 1057. If a substantial basis exists to support the magistrate's probable cause finding, we must uphold that finding even if a "different magistrate judge might have found the affidavit insufficient to support a warrant." *Conley*, 4 F.3d at 1205. Although we do not merely "rubber stamp a magistrate's conclusions," *Whitner*, 219 F.3d at 296 (citation and quotation omitted), we must heed the Supreme Court's direction that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n. 10, 103 S. Ct. 2317 (citation and quotation omitted).
>
> Probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *Id.* at 232, 103 S. Ct. 2317. When presented with an application for a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S. Ct. 2317. Although every affidavit ideally would contain direct evidence linking the crime with the place to be searched, a magistrate may issue a search warrant even without direct evidence. Probable cause can be, and often is, inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *Jones*, 994 F.2d at 1056 (citation and quotation omitted). Because probable cause is a "practical, nontechnical conception," we are concerned with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231, 103 S. Ct. 2317 (citation and quotation omitted).

*Stearn*, 597 F.3d at 554.

### B. Reliability of the Confidential Informant

McKinnon argues that the affidavit failed to state specific facts about the CI's reliability. If a search warrant affidavit refers to information gained from a CI, bare conclusory assertions by the affiant about the reliability and veracity of the CI are not sufficient. *United States v. Williams*, 974 F.3d 320, 351 (3d Cir. 2020) (citing *Nathanson v. United States*, 290 U.S. 41, 47 (1933)). By contrast, corroboration of the CI's information in significant part by independent police investigation may support a judge's finding of probable cause. *Id*.

6

In this case, Frampton's affidavit provides substantial information about the CI's reliability, from which the issuing judge could have inferred probable cause. The affidavit recounted the reliability of the CI's past contacts with law enforcement, which led to multiple convictions and seizures of drugs and money. The affidavit disclosed law enforcement efforts to corroborate independently the information provided by the CI about McKinnon, including a search of McKinnon's criminal history, review of property ownership records, a photograph identification (discussed in more detail below), and surveillance of the locations. Most importantly, the police officers corroborated the CI's information about McKinnon's drug dealing by observing the CI engage in multiple controlled purchases of drugs from McKinnon. In sum, McKinnon's contention that the evidence should be suppressed due to a failure to establish the credibility of the CI is without merit.

### C. Photo Identification

McKinnon argues that the evidence should be suppressed because law enforcement agents showed a single photograph of McKinnon to the CI. The government contends that this argument fails for several reasons: (1) a preindictment identification does not violate a defendant's rights; (2) the photo display occurred after the CI had identified McKinnon; and (3) the reliability of the CI's photo identification was supported by numerous other facts. The government represents that the CI will not testify at trial. The government points out that the two controlled buys were not charged as crimes, and that McKinnon was independently "identified" by law enforcement officers when he was found, alone, in the 713 Emerson location when the search warrants were executed on February 14, 2020, while in possession of the drugs and firearms charged in the indictment.

McKinnon cites *Manson v. Brathwaite*, 432 U.S. 98 (1977), for the proposition that identification evidence obtained by a police procedure that was both suggestive and unnecessary may violate a defendant's due process rights. In *Manson*, the issue was whether the identification evidence was admissible at trial. *Id.* at 99. The Supreme Court distinguished the use of identification procedures under the circumstances of this case, noting: "Unlike a warrantless search, a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest. Thus, considerations urging the exclusion of evidence deriving from a constitutional violation do not bear on the instant problem." *Id.* at 113 n. 13 (citing *United States ex rel. Kirby v. Sturges*, 510 F.2d 397, 406, 408 (7th Cir. 1975) ("the constitutional error that the rule is intended to avoid is an unfair trial")). *See Haywood v. Swalls*, No. 18 C 7549, 2020 WL 2735369, at *8 (N.D. Ill. May 26, 2020) ("*Manson* involved a defendant's due process rights with regard to the admissibility at trial of testimony about a suggestive identification procedure, *see Id.* at 102, 117, not the admissibility of evidence that was obtained by a search warrant issued after an identification procedure.").

McKinnon did not cite any authority for the proposition that inclusion in Frampton's affidavit of a statement that the CI identified McKinnon from a photograph somehow displaces the general principles of law about probable cause and deference to search warrants issued by a judge, as set forth above. The court did not find such authority in its independent research. Evidence need not be admissible at trial to support a finding of probable cause. *Stansbury v. Wertman,* 721 F.3d 84, 91 & n.7 (2d Cir. 2013) ("For the purposes of determining whether an identification can support probable cause, the basic question is whether the identification procedure was 'so defective that probable cause could not reasonably be based upon it.' ") (citation omitted). Under the totality of the circumstances of this case, with the strong support

for probable cause set forth in the affidavit, the CI's photographic identification does not warrant suppression of the evidence obtained when agents executed the duly-issued search warrants.

The court, although it need not reach the government's alternative justification, agrees that the CI's identification of McKinnon was reliable. In evaluating reliability, the court must determine whether, under the totality of the circumstances, there was "a very substantial likelihood of ... misidentification" based upon the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *United States v. Stevens*, 935 F.2d 1380, 1391 (3d Cir. 1991) (citations omitted). If the identification is reliable, the testimony may be admitted at trial even if the display is unduly suggestive. *Id. See also United States v. Caple*, 403 F. App'x 656, 660 (3d Cir. 2010) (showing a photograph of defendant and asking if he sold drugs was not unduly suggestive where controlled drug buys confirmed that the witnesses and defendant knew each other).

Frampton's affidavit contained sufficient evidence for the state court judge to find the CI's identification of McKinnon to be reliable. Paragraph 21 of Frampton's affidavit provides that, as the initial step, the CI informed officers that McKinnon was trafficking crack cocaine. The photograph was not used to bring McKinnon to the attention of the CI; instead, the photograph was presented to the CI after McKinnon had already been named by the CI, to corroborate that the CI could positively identify him. The circumstances of the controlled buys, which the officers witnessed, indicated an established relationship because the CI was permitted to remain alone inside the 713 Emerson location while McKinnon walked up the street. The CI was a participant in an ongoing, in-person drug-buying relationship with McKinnon, not a stranger or

passing observer.  Defendant did not point to any reason to doubt the level of certainty of the CI's identification.  The timing was contemporaneous.  Law enforcement officers were able to independently observe and confirm McKinnon's identity during the controlled buys (and when the warrants were executed).  In sum, the CI's identification of McKinnon was reliable.  Defendant's arguments for suppression are not persuasive.

### D. *Franks* Hearing

Finally, McKinnon argues that the affidavit contained a deliberately false or misleading statement that he was residing at the 713 Emerson location.  McKinnon contends (albeit through argument of counsel rather than a sworn statement) that his state parole authorized residence is in Erie County; he is subject to random drug tests and home searches; on February 12, 2020, he obtained permission to travel to Mercer County to pack his son's belongings and place his son on a plane to live in Arizona; and he obtained permission from Kelly Tumpkins to spend the night of February 13, 2020 at 713 Emerson (ECF No. 26 at 7-8).[1]  McKinnon argues that the dates of the investigation and general statements of observation are deliberately misleading to prohibit McKinnon from using his parole information to counter his actual presence and wrongful identification.  *Id.* at 8.

The government argues that McKinnon failed to make a sufficient preliminary showing to warrant a *Franks* hearing.  The government points out that McKinnon did not offer any evidence of falsity, much less intentional falsity, in Frampton's affidavit, and explains that the imprecision

---

[1] The government does not contend that McKinnon lacks standing to challenge the search.  See *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."); *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) (overnight guest at a home generally has standing to challenge a search).

in the dates was done to protect the identity of the CI. The government also argues that the alleged misstatements were immaterial to the finding of probable cause.

To trigger the right to a *Franks* hearing, a defendant must make a "substantial preliminary showing" that: (1) a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit; and (2) the allegedly false statement is necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). The Supreme Court explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171.

McKinnon failed to submit an affidavit or other reliable offer of proof. McKinnon also failed to meet either prong of the *Franks* test.

As to the "falsity" prong, McKinnon apparently argues that the reference that he was "currently residing" at the 713 Emerson location constituted a reckless disregard for the truth. As explained in *United States v. Brown*, 631 F.3d 638 (3d Cir. 2011), "[a]n assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* at 645 (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). The court identified two distinct ways in which conduct can be found reckless: "either the affiant actually entertained serious doubts; or obvious reasons existed for him to do so, such

11

that the finder of fact can infer a subjectively reckless state of mind." *Id*.

There is no evidence that Frampton subjectively disbelieved or had an obvious reason to disbelieve the CI's statement that McKinnon currently resided at the 713 Emerson location. The CI informed Frampton that to buy drugs, he/she went directly to McKinnon at the 713 Emerson location. Affidavit ¶ 25. Frampton personally observed McKinnon enter and leave that location on two different dates during the controlled buys. McKinnon admitted in his motion that he stayed at 713 Emerson overnight on February 13, 2020. There is no evidence proffered by McKinnon to show that Frampton intended to deceive the judge. The affidavit included information that McKinnon did not own 713 Emerson and periodically stayed at 622 Emerson. Affidavit ¶¶ 24, 33.

As to the "necessity" prong, the court must consider whether the affidavit's remaining content is sufficient to establish probable cause, if the allegedly false material is set aside. *Franks*, 438 U.S. at 156. McKinnon did not challenge the veracity of any other facts in the affidavit. As explained above, there was strong other support for the existence of probable cause to search both locations. Even if McKinnon did not "reside" at the 713 Emerson location and that phrase is removed from the affidavit, he certainly had unrestricted use of the apartment on numerous occasions and he does not challenge the statement in the affidavit that he used both locations as "stash houses." Affidavit ¶ 18.

In summary, McKinnon is not entitled to a *Franks* hearing.

IV.     Conclusion

After careful consideration of the record and relevant legal authorities, the court concludes that the motion to suppress evidence filed by McKinnon (ECF No. 26) must be DENIED.  A telephone conference will be scheduled for January 7, 2021 at 11:00 a.m., to discuss the procedural status of the case.

An appropriate order will be entered.

January 5, 2021

BY THE COURT:

/s/ *Joy Flowers Conti*
Joy Flowers Conti
Senior United States District Judge